## Commonwealth v. Armstrong

*Henry Moore*, for Commonwealth.

*Anna Belle Jones*, for defendant.

ACKER, J., November 1, 1968.—Defendant was arrested, tried, and convicted before a justice of the peace for two violations of The Vehicle Code. The first conviction was under subsection b of 1008 of article 10

(unlawful passing), and the second, paragraph b, subsection 6, sec. 1002, art. 10 (speeding), both of The Vehicle Code. These matters come before this court on "exceptions and certiorari" requesting that "the proceedings be quashed".

It is the position of defendant that the transcript is fatally defective as to the charge of "unlawful pass," in that the transcript merely shows that the defendant was ". . . making a pass at a dip before reaching Robbins Ford, pass a truck, started pass at bottom of dip still in process in coming out of dip on the grade".

It is contended that the justice of the peace had an obligation to make a finding to be set forth in the transcript that the driver's view along the highway was obstructed within a distance of 500 feet, for obstruction of view is "the essential ingredient".

A review of the requirements of a transcript or record in a summary proceeding before a justice of the peace is found in an opinion of this court in Commonwealth v. Fondak, 44 D. & C. 2d 337 (1968).

The leading case appears to be Reid v. Wood, 102 Pa. 312, (1882), which holds that:

". . . a summary conviction shall contain a finding that a specific act has been performed by the defendant; and that it shall describe or define it in such a way as to individuate it, and show that it falls within an unlawful class of acts".

It is clear that the justice of the peace must set forth the section of the act allegedly violated, the testimony tending to establish the violation, and the judgment or finding of the justice of the peace following the hearing: Commonwealth v. Wagner, 16 D. & C. 2d 162 (1957); Commonwealth v. Lewis, 10 D. & C. 459 (1928); Commonwealth v. VanKirk, 32 Northumb. 30, 32 (1959).

Applying these requirements to The Vehicle Code of April 29, 1959, P. L. 58, sec. 1008, 75 PS §1008 (b),

the driver is not permitted to overtake or pass another vehicle proceeding in the same direction when certain specific conditions are present; namely, (1) when approaching the crest of a grade, or (2) on a curve in a highway. In addition, however, to being regarded as a violation such conduct must occur where ". . . the driver's view along the highway is obstructed within a distance of 500 feet ahead. . . ."[1]

It is, therefore, obvious that transcript which merely stated that the defendant was ". . . making a pass at a dip before reaching Robbins Ford, pass a truck, started pass at bottom of dip still in process in coming out of dip on the grade" does not establish that the defendant was attempting to pass or was in the act of passing when his vision was obstructed within a distance of 500 feet. The topography of the road and the conditions then and there existing at the time of the attempted pass as to obstructions to visibility by moving vehicles upon the highway or parked along the berm must be set forth in the transcript.

---

[1] Ricker Automobile License Case, 13 Bucks 136, holds that The Vehicle Code is subject to the interpretation that there is nothing unlawful in passing another vehicle while approaching a curve in a highway unless the driver's view is obstructed within a distance of 500 feet ahead. Commonwealth v. Dorr, 27 D. & C. 372 (1936), holds that even though a driver can see across the arch of a curve more than the statutory distance, but his view is limited in the curve itself to less than the statutory distance, he has violated the statute. Commonwealth v. Brinker, 58 Lanc. 247 (1962), interprets the code as requiring that defendant not only have an unobstructed view of 500 feet ahead at the time that he commences the pass, but if the pass is at the crest of a hill, which does not permit him to have an unobstructed view of that distance ahead as he comes over the hill on the act of passing, he is guilty of a violation of the statute. Finally, the statute has been interpreted as requiring the driver to have an unobstructed vision for a distance of 500 feet at the moment any portion of the overtaking vehicle is opposite or along side the vehicle being overtaken: Commonwealth v. Shetrom, 24 D. & C. 2d 592 (1961).

Wherefore, the defendant's conviction of an alleged violation of subsection (b) of 1008, art. 10 of The Vehicle Code, as amended, is set aside.

Defendant was also convicted of a violation of section 1002, subsection 6, para. (b), art, 10 (speeding) of The Vehicle Code. The attack on the speeding conviction, in which it was found that defendant was traveling 70 miles per hour, when only permitted to travel 55 miles per hour at the place of arrest, is that the justice of the peace has noted on her transcript at the hearing, ". . . amended the information on the speeding, from 5:55 o'clock to read 6:08 o'clock, and also added the date, November 8, 1967, to the tested for accuracy of speedometer, before the swearing in and testimony".

The Vehicle Code of April 29, 1959, P. L. 58, sec. 1002, 75 PS §1002, subsection (d) (2) reads: "The secretary shall have the authority to appoint official stations for testing speedometers, and may prescribe regulations as to the manner in which such tests shall be made, and shall issue to such stations official inspection certificate forms".

By The Vehicle Code of April 29, 1959, P. L. 58, sec. 1002, 75 PS §1002, subsection (d) (1), an arrest may be made by a peace officer if a vehicle is timed for distance of not less than one-quarter mile by the use of a motor vehicle equipped with a speedometer tested for accuracy within a period of 30 days prior to the alleged violation.

"An official certificate from an official speedometer testing station, showing such test was made, that the speedometer was adjusted for accuracy, if necessary, *the date thereof*, and the degree of accuracy of such speedometer, shall be competent and prima facie evidence of the fact that such certificate was issued by an official speedometer testing station appointed by the secretary, and of the accuracy of the speedometer in

every proceeding wherein information is brought charging a violation of this section".[2]

The reading of all of the papers brought before this court on the writ of certiorari causes the conclusion that the justice of the peace when referring to her addition, "testing for accuracy of speedometer" must have been referring to the certificate required from the official inspection station. There is no appearance on any of the other documents of any similar language. Therefore, the justice of the peace added to the certificate a critical fact for conviction, i.e., that the speedometer be examined within the 30-day required statutory period. If the correction or amendment had been made after the swearing in and testimony was received from the police officer that the speedometer had in fact been checked within the 30-day period, it could have been regarded as independent evidence supporting the certificate. However, the transcript specifically states that it was done " . . . before the swearing in and testimony".

What date if any appeared on the certificate prior to the interlineations, who gave the justice of the peace the information as to when the test was run, was the information supplied from hearsay evidence or a

---

[2] The requirements of The Vehicle Code as to the certificate of the speedometer must be strictly construed. In Commonwealth v. Houseknecht, 19 D. & C. 2d 48 (1959), the certificate that the speedometer was "tested and found accurate to within allowable tolerances" was held insufficient.

Commonwealth v. Parish, 138 Pa. Superior Ct. 593 (1939), involved a case which occurred prior to the amendment of June 27, 1939, making the certificate prima facie proof that the speedometer had been tested and it registered accurately. There it was noted, however, at page 596: "The requirement that monthly inspections be made of speedometers on motor vehicles of peace officers was written into the Act for the protection of the users of the highway to prevent unwarranted arrests, and not to hamper the Commonwealth in its proof".

source who was present and had actual knowledge? Without the answers to these vital questions, it is impossible to consider the authenticity of the certificate.

The problem here presented is somewhat analogous to that in Commonwealth v. Fondak, supra, where the justice of the peace attached an uncertified, unsigned, and unauthorized "transcript" of the proceedings prepared by a secretary for counsel for defendant. There it was held that such a practice was unacceptable and contrary to the established law.

The practice of a justice of the peace making interlineations in certificates provided from an official testing station as to the date of the test is equally poor practice. The record fails to disclose any independent evidence of an examination of the speedometer as required by the statute. Therefore, the conviction of defendant for the alleged violation of paragraph (b), subsection 6, sec. 1002, art. 10 of The Vehicle Code is likewise vacated.[3]

ORDER

And now, this November 1, 1968, it is hereby ordered that the conviction of defendant, Jack L. Armstrong, for violation of section 1008, subsection (b), art. 10, act 32, approved April 29, 1959, (illegal pass) and the conviction of defendant, Jack L. Armstrong, for violation of paragraph (b), subsection 1002, art. 10, act 32, P. L. 58, 1959, (speeding) are set aside; the fine and costs paid by defendant are to be returned to him, and the costs shall be paid by the county of Mercer.

---

[3] This case without independent proof of a proper check of the speedometer, in that the certificate cannot be accepted, is in the position of Commonwealth v. Arcara, 81 D. & C. 42 (1952), where no proof was offered that the speedometer had been tested within the required period. Upon certiorari, the conviction was set aside.